UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

BRIAN KEITH SCHWAB,

                    Plaintiff,

v.

UNKNOWN DEVARMER et al.,

                    Defendants.

_____/

Case No. 1:20-cv-485

Honorable Paul L. Maloney

**<u>OPINION</u>**

       This is a civil rights action brought by a county jail pretrial detainee under 42 U.S.C. § 1983.[1]  Plaintiff is charged with first-degree criminal sexual conduct (victim under 13) (CSC-I), second degree criminal sexual conduct (victim under 13), possession of child sexually abusive material, sex-offender failure to register, use of a computer to commit a crime, identity theft, and impersonating a police officer to commit a crime; he has also received notices of sentence enhancements.  *See*  https://www.accesskent.com/InmateLookup/showCharge  (search  "Brian Schwab" visited June 29, 2020).  Plaintiff was on parole when he allegedly committed the offenses with which he is charged.  Therefore, it is possible that his present detention is related to violation

---

[1] Plaintiff is charged with first-degree criminal sexual conduct (victim under 13) (CSC-I), second degree criminal sexual conduct (victim under 13), possession of child sexually abusive material, sex-offender failure to register, use of a computer to commit a crime, identity theft, and impersonating a police officer to commit a crime; he has also received notices of sentence enhancements.  *See* https://www.accesskent.com/InmateLookup/showCharge (search "Brian Schwab" visited June 29, 2020).  Plaintiff was on parole when he allegedly committed the offenses with which he is charged.  Therefore, it is possible that his present detention is related to violation of his parole terms rather than, or in addition to, pretrial detention on his pending criminal prosecutions.  The Kent County Jail inmate lookup describes Plaintiff's status as "in custody."  *See* https://www.accesskent.com/InmateLookup/showDetail.do?bookNo =1814167 (visited June 29, 2020).  The Michigan Department of Corrections Offender Tracking Information System describes Plaintiff's status as "Parolee-Held under custody."  *See* https://mdocweb.state.mi.us/otis2/otis2profile.aspx? mdocNumber=388934 (visited June 29, 2020).  Plaintiff has not yet served the maximum sentences on the paroled offenses nor has he reached his supervision discharge date.  *Id.*

of his parole terms rather than, or in addition to, pretrial detention on his pending criminal prosecutions. The Kent County Jail inmate lookup describes Plaintiff's status as "in custody." *See* https://www.accesskent.com/InmateLookup/showDetail.do?bookNo =1814167 (visited June 29, 2020). The Michigan Department of Corrections Offender Tracking Information System describes Plaintiff's status as "Parolee-Held under custody." *See* https://mdocweb.state.mi.us/otis2/otis2pro file.aspx?mdocNumber=388934 (visited June 29, 2020). Plaintiff has not yet served the maximum sentences on the paroled offenses nor has he reached his supervision discharge date. *Id*.

Plaintiff is proceeding *in forma pauperis* in this Court. (Order, ECF No. 5.) Moreover, he is a "prisoner" as that term is defined in 28 U.S.C. § 1915(h) ("[T]he term prisoner means any person . . . detained in any facility who is accuse of . . . violations of the criminal law or the terms and conditions of parole . . . ."). Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Kent County Sheriff Michelle Young and Kent County.[2] The Court will also dismiss Plaintiff's claims against Defendants Unknown Devarmer and Ernest

---

[2] Defendant Kent County was inadvertently left off the caption in the Court docket. The Court directs the Clerk to add Kent County as a defendant, as reflected in the caption of Plaintiff's complaint and in the listing of defendants. (Compl., ECF No. 1, PageID.1-2.)

McNeill for violation of Plaintiff's due process rights.  Plaintiff's Fourteenth Amendment claims against Defendants Devarmer and McNeill for the use of excessive force, failure to protect, and deliberate indifference to serious medical needs remain in the case.

**Discussion**

## I.      Factual Allegations

Plaintiff is detained at the Kent County Correctional Facility.  It appears he has been detained there for almost two years.  This is not Plaintiff's first complaint raising these claims.  In *Schwab v. Kent County et al.*, No. 1:20-cv-290 (W.D. Mich.) (*Schwab I*), Plaintiff made the same factual allegations he makes in this case.  The Court concluded the allegations and the claims arising from them were misjoined to Plaintiff's principal claims, so he dismissed them without prejudice.  *Schwab I* (Op., ECF No. 10.)  Plaintiff filed his complaint in this case a few weeks later.

Plaintiff sues Kent County, Kent County Sheriff Michelle Young, and Kent County Deputies Unknown Devarmer and Ernest McNeill.  Plaintiff alleges that Defendant McNeill overheard another inmate threaten to beat up Plaintiff.  Nonetheless, McNeill simply walked away. He did not inform other officers.  As Plaintiff attempted to let other officers know about the threat, the other inmate attacked.  Defendant McNeill was part of the team of officers that broke up the fight between Plaintiff and the other inmate.

Plaintiff reports that McNeill restrained Plaintiff in handcuffs so tight that they cut into Plaintiff's wrists.  Moreover, McNeill did not bring Plaintiff for medical treatment despite the fact that Plaintiff was bleeding "from everywhere" and asked for medical assistance.  (Compl., ECF No. 1, PageID.6.)

McNeill brought Plaintiff to segregation.  There, he was joined by Defendant Devarmer.  Plaintiff asked for relief from the too tight handcuffs.  He was refused relief and,

instead, Defendants grabbed Plaintiff's arm making the cuffs even tighter.  As they escorted Plaintiff up the stairs, he started to panic.  He accidentally kicked at the door.  Plaintiff reports the Defendants interpreted that act as an assault upon them.  Devarmer slammed Plaintiff against a steel window frame, knocking Plaintiff unconscious.

When Plaintiff awoke, Devarmer was forcing Plaintiff's face into the stair grate with Devarmer's knee and his full weight on Plaintiff's back.  When Plaintiff complained, Devarmer pressed harder.

More deputies arrived and dragged Plaintiff to a room.  Plaintiff laid in that room, on his stomach, as deputies kicked him and stepped on his ankle.  Devarmer removed Plaintiff's cuffs through the door slot, slamming Plaintiff's hands in the slot and removing skin and flesh down to the bone.  Plaintiff describes a number of significant symptoms following the beating from the inmate and the deputies.  He asked for medical care, but did not receive care.

Plaintiff contends that Defendant Young is liable for the actions of her deputies, because she is their superior, because she failed to train them, and because she has a policy of not protecting vulnerable inmates and permitting excessive force by her deputies—or, more accurately, she fails "to implement and/or enforce policies protecting inmates from excessive force."  (Compl., ECF No. 1, PageID15.)  Plaintiff claims Kent County is liable for the same reasons.

Plaintiff contends that McNeill is liable for depriving Plaintiff of property by permitting an inmate trustee to gather Plaintiff's property (and then take it).  Plaintiff also claims that one or more of the Defendants denied him due process in connection with the disciplinary action against him for the assault Plaintiff purportedly committed against Devarmer and McNeill

4

on the stairs.  Plaintiff claims he received no notice of the charges, no notice of the hearing, no proper hearing, and no opportunity to prepare a defense.

Moreover, Plaintiff claims that Kent County imposed cruel and unusual punishment on him because he is a mentally ill person and Kent County placed him in punitive segregation.

Plaintiff claims that McNeill is liable for violating his constitutional rights because he failed to protect Plaintiff from the inmate despite the threat of violence.  Plaintiff claims that McNeill and Devarmer are liable for his mistreatment and he was pulled from the fight, transported to segregation, beaten in segregation, and then denied medical treatment.  Plaintiff contends that McNeill and Devarmer are also liable for state law torts.

Plaintiff seeks declaratory relief along with compensatory and punitive damages. Plaintiff also asks the Court to compel the county and the sheriff to "immediately implement and enforce strict policy and punishment on deputies for use of excessive force and against the  abuse and mistreatment of pretrial detainees and convicted inmates."  (Compl., ECF No. 1, PageID22.)

## II.	Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at

679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III.    Municipal liability

A local government such as a municipality or county "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a municipality may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff.  *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 35-37 (2010) (citing *Monell*, 436 U.S. at 694 (1974)).  In a municipal liability claim, the finding of a policy or custom is the initial determination to be made.  *Doe v. Claiborne Cty.*, 103 F.3d 495, 509 (6th Cir. 1996).  The policy or custom must be the moving force behind the

constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509. It is the court's task to identify the officials or governmental bodies which speak with final policymaking authority for the local government in a particular area or on a particular issue. *McMillian v. Monroe Cty.*, 520 U.S. 781, 784-85 (1997).

In matters pertaining to the conditions of the jail and to the operation of the deputies, the sheriff is the policymaker for the county. Mich. Comp. Laws § 51.75 (sheriff has the "charge and custody" of the jails in his county); Mich. Comp. Laws § 51.281 (sheriff prescribes rules and regulations for conduct of prisoners); Mich. Comp. Laws § 51.70 (sheriff may appoint deputies and revoke appointments at any time); *Kroes v. Smith*, 540 F. Supp. 1295, 1298 (E.D. Mich. 1982) (the sheriff of "a given county is the only official with direct control over the duties, responsibilities, and methods of operation of deputy sheriffs" and thus, the sheriff "establishes the policies and customs described in *Monell*"). Thus, the court looks to the allegations in plaintiff's complaint to determine whether plaintiff has alleged that the sheriff has established a policy or custom which caused plaintiff to be deprived of a constitutional right.

Although Plaintiff repeats the word "policy" in his complaint a few times in a conclusory fashion, he offers no factual allegations that back it up. A "policy" includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff. *Monell*, 436 U.S. at 690. Plaintiff has not asserted that there is an official policy only that the deputies failed to protect him—and perhaps failed to protect others—and used excessive force on him. There are no allegations to support the existence of any official policy.

Moreover, Plaintiff has not identified a custom.  The Sixth Circuit has explained that a "custom"

> . . . for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law.  In turn, the notion of "law" includes deeply embedded traditional ways of carrying out state policy.  It must reflect a course of action deliberately chosen from among various alternatives.  In short, a "custom" is a "legal institution" not memorialized by written law.

*Claiborne Cty.*, 103 F.3d at 507 (citations and quotations omitted).  Plaintiff's allegations do not reasonably support an inference that the sheriff has deliberately chosen a course of action that resulted in Plaintiff's injuries.  Thus, Plaintiff has failed to allege that the sheriff, as final policymaker for conditions of the jail and operations of the deputies, had a policy or custom that caused plaintiff to be deprived of a constitutional right.  Indeed, Plaintiff suggests that the county does not have a policy and that such a shortcoming must be corrected by the Court.  Plaintiff's complaint does not support the inference that the sheriff has adopted a policy or pursued a custom that caused a violation of Plaintiff's constitutional rights.  At best, it supports the inference that the sheriff failed to adopt an unspecified policy or custom that somehow could have prevented the violation of Plaintiff's constitutional rights.

Where a plaintiff fails to allege that a policy or custom existed, dismissal of the action for failure to state a claim is appropriate.  *Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987); *see also Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation).  Therefore, the Court will dismiss Plaintiff's complaint against Kent County because he has failed to state a claim upon which relief may be granted.

8

## IV.    Sheriff Young

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

Plaintiff does not allege any direct involvement by Defendant Young in the attack by the inmate or the response by the deputies, in the deprivation of Plaintiff's property, in the processing of the disciplinary action, or the decision to place Plaintiff in segregation.  Moreover, Plaintiff has allegations do not support the inference that Sheriff Young adopted a policy or supported a custom that resulted in the violation of Plaintiff's constitutional rights.  Accordingly, Plaintiff has failed to allege that Defendant Young engaged in any active unconstitutional behavior and he fails to state a claim against her.

## V.    Due process

The elements of a procedural due process claim are:  (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest

(3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

### A. Deprivation of property

Plaintiff alleges that Defendant McNeill deprived Plaintiff of property without due process of law by permitting an inmate trustee to pack up and take the personal property in Plaintiff's cell. Plaintiff certainly has a protectible property interest in his personal property, and he alleges he was deprived of that property and that he received no process. But, he still fails to state a claim.

Plaintiff's claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).

The *Parratt* court further recognized that meaningful post-deprivation remedies "can satisfy the requirements of procedural due process" where the State is faced with "either the necessity of quick action . . . or the impracticality of providing any meaningful predeprivation process." *Id.* at 539; *see also Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995) ("a post-deprivation or common-law tort remedy may be constitutionally adequate where pre-deprivation process is impractical") (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982)). Here,

Plaintiff claims that Defendant McNeill committed a random and unauthorized act when he permitted an inmate trustee to pack up Plaintiff's property when it was the deputy's job.

Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. *See id.*; *see also Copeland*, 57 F.3d at 479-80. Notwithstanding Plaintiff's omission, "Michigan [state law] provides several adequate post-deprivation remedies, including Michigan Court Rule 3.105 that allows an action for claim and delivery, [and] Mich. Com. Laws § 600.2920 that provides for a civil action to recover possession of or damages for goods and chattels unlawfully taken or detained." *Copeland*, 57.F.3d at 480. The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See id.* Thus, Plaintiff has failed to sustain his burden that he was deprived of property without due process and he has failed to state a claim for the unconstitutional deprivation of his property.

**B.     Deprivation of liberty through placement in segregation**

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

11

Plaintiff's misconduct charge and conviction affected a number of Plaintiff's interests, but none of them fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship.  As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his detention.

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation."  At most, Plaintiff was sanctioned with confinement in punitive segregation for a brief period.  That placement would not rise to the level of a protected liberty interest.  As the Supreme Court has held, segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration."  *Hewitt v. Helms*, 459 U.S. 460, 468 (1983).  Thus, it is considered atypical and significant only in "extreme circumstances."  *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010).  Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship."  *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship.  *Sandin,* 515 U.S. at 484.  Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process.  *See Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant).  It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest.  *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal

12

contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant.  *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

Plaintiff fails to demonstrate that he was placed in segregation for an atypical period of time, much less that he suffered the sort of segregation that would implicate a liberty interest under *Sandin*.  Therefore, he has failed to demonstrate that he was entitled to the protections of due process in connection with his disciplinary proceedings and he has failed to state a claim for violation of his due process rights in connection with those proceedings.

## VI.     Excessive force, failure to protect, and deliberate indifference to serious medical needs

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every

13

unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

The Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834 (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop*, 636 F.3d at 766.

Plaintiff is parolee, perhaps a parole violator, and a pretrial detainee. It appears that as a parolee, he is a person convicted of a crime who is being punished and is thus protected by the Eighth Amendment. *See Tuttle v. Carroll Cty. Detention Center*, 500 F. App'x 480 (6th Cir. 2012). But, Plaintiff is also a pretrial detainee with respect to the pending criminal charges.

Pretrial detainees held in jail are protected under the Due Process Clause of the Fourteenth Amendment, which provides that "a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535

(1979).  The Eighth Amendment protections against cruel and unusual punishment long have been held to be coterminous under the Fourteenth Amendment Due Process Clause.  *See, e.g., Estate of Carter v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005); *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir.2001); *Thompson v. County of Medina*, 29 F.3d 238, 241 (6th Cir. 1995); *Barber v. City of Salem*, 953 F.2d 232, 235 (6th Cir. 1992); *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir.1985)).  Thus, the Court is guided by Eighth Amendment principles in considering Plaintiff's claims.

There are, however, some differences between the protections afforded Plaintiff as a pretrial detainee and those afforded him as a convicted parolee.  In *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the Supreme Court held that the use of excessive force on pretrial detainees is measured under the Due Process Clause of the Fourteenth Amendment.  The Court rejected a subjective standard, holding that the relevant inquiry is whether the force purposely or knowingly used against the prisoner was objectively unreasonable.  *Id.* at 2473-74; *see also Coley v. Lucas Cty.*, 799 F.3d 530, 538 (6th Cir. 2015) (citing *Kingsley*).  In *Richmond v. Huq et al.*, 885 F.3d 928 (6th Cir. 2018), the Sixth Circuit declined to decide whether, in the context of a failure to provide medical care, *Kingsley* eliminated the requirement of proving the subjective prong of the deliberate indifference test for pretrial detainees under the Fourteenth Amendment.  *Id.* at 938 n.3.  As a consequence, the two-pronged deliberate-indifference standard continues to apply to medical claims by pretrial detainees.

Whether Plaintiff's complaints are measured under the Eighth Amendment standard or the Fourteenth Amendment standard, Plaintiff's claims against Defendants McNeill and Devarmer suffice to state claims with regard to the use of excessive force, failure to protect

Plaintiff from a violent inmate, and deliberate indifference to Plaintiff's serious medical needs. Those are the claims that remain in this action.

## VII.   Request to appoint counsel

Plaintiff asks the Court to appoint counsel.  Indigent parties in civil cases have no constitutional right to a court-appointed attorney.  *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993).  The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604-05; *see Mallard v. U.S. Dist. Court*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances.  In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel.  *See Lavado*, 992 F.2d at 606.  The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position.  Therefore, Plaintiff's request for appointment of counsel (ECF No. 3) will be denied.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Kent County and Young will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will also dismiss, for failure to state a claim, Plaintiff's claims against Defendants McNeill and Devarmer regarding a deprivation of property without due process and a deprivation of liberty without due process in connection with disciplinary proceedings.  Plaintiff's claims against Defendants Devarmer and McNeill for excessive force, failure to protect from a violent inmate, and deliberate indifference to serious medical needs remain in the case.

16

Plaintiff's request to appoint counsel will be denied.  An order consistent with this opinion will be entered.

Dated:   June 30, 2020                    /s/ Paul L. Maloney
                                          Paul L. Maloney
                                          United States District Judge