UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN KEITH SCHWAB #388934,

      Plaintiff,                               Hon. Hala Y. Jarbou

v.                                             Case No. 1:20-cv-485

JOEL DEVORMER, et al.,

      Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 28) and Plaintiff's Motion for Summary Judgment (ECF No. 31). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be granted, Plaintiff's motion be denied, and this action be terminated.

## BACKGROUND

Plaintiff is presently incarcerated by the Michigan Department of Corrections, having been convicted of child sexually abusive activity and second degree criminal sexual conduct involving a victim under thirteen years of age. *See* Michigan Department of Corrections, Brian Keith Schwab #388934, available at https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=388934 (visited June 2, 2021). Plaintiff committed these offenses while on parole following convictions for second degree criminal sexual conduct (involving a victim under the age of 13) and being a felon in possession of a firearm. (*Id.*; ECF No. 6).

Plaintiff initiated the present action while detained at the Kent County Jail pending resolution of the charges identified above. Plaintiff sued Kent County, Kent County Sheriff Michelle Young, and Kent County Deputies Joel DeVormer and Ernest McNeill. Plaintiff advanced numerous causes of action, however, at this juncture only the following claims remain: (1) failure by Defendant McNeill to protect Plaintiff from another inmate; (2) use of excessive force by Defendants McNeill and DeVormer; and (3) deliberate indifference by McNeill and DeVormer to Plaintiff's serious medical needs. With respect to these claims, Plaintiff alleges the following.

On an unspecified date, another inmate (later identified as Rodney Debose) threatened to assault Plaintiff. During this encounter, Deputy McNeill was standing "less than 3 feet away." McNeill took no action, however, to protect Plaintiff and instead simply walked away. Plaintiff later approached a housing unit officer to report the threat to his safety. While speaking with this officer, Plaintiff was assaulted by Debose. McNeill was one of the officers who responded to this altercation. McNeill subdued Plaintiff by placing him in handcuffs secured so tightly that they cut into his wrists. McNeill also ignored Plaintiff's requests for medical assistance.

McNeill instead transported Plaintiff to segregation where they encountered Deputy DeVormer. Plaintiff requested that his handcuffs be loosened. Plaintiff also requested that he not be led up the stairs with his hands cuffed behind his back as such would cause him to experience a panic attack. DeVormer responded by instructing Plaintiff to "quit crying like a bitch, shut up and let us do the thinking for you, obviously you can't think for yourself." DeVormer then grabbed Plaintiff's wrists "causing the

2

cuffs to go tighter making Plaintiff's hands go numb." McNeill and DeVormer then proceeded to "shove[]" Plaintiff up the stairs.

By the time the group reached the top of the stairs, Plaintiff was experiencing a panic attack. Plaintiff "started screaming and kicked the door accidentally as [he] begged to hurry up and open the door so he could get off the balcony." McNeill and DeVormer responded by "slam[ing] Plaintiff against the window." DeVormer then "slammed Plaintiff's face into a steel window frame knocking [him] unconscious." When Plaintiff regained consciousness, DeVormer was positioned with his knee on Plaintiff's lower back forcing Plaintiff's face down into the top stair grate.

When Plaintiff "tried explaining his chronic back problems," DeVormer simply "laughed and pressed harder on Plaintiff's back." Plaintiff was taken into a cell and DeVormer instructed Plaintiff, "don't get up or you will get tased." When Plaintiff requested medical attention, DeVormer responded, "you should of thought of that before you assaulted an officer." McNeill and DeVormer now move for summary judgment. Plaintiff has responded to Defendants' motion by submitting his own motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case." *Harden v. Hillman*, - - - F.3d - - -,

3

2021 WL 1257802 at *4 (6th Cir., Apr. 6, 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006). Likewise, the non-moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735. Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 2021 WL 1257802 at *4.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). Accordingly, summary judgment in favor of the party with the burden of proof "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.    Failure to Protect**

Plaintiff alleges that Defendant McNeill failed to protect him from the assault he suffered from fellow inmate Rodney Debose.[1] Specifically, Plaintiff alleges that, when Debose threatened to assault him, McNeill was standing "less than 3 feet away," yet took no action to protect Plaintiff who was subsequently assaulted by Debose.

Because Plaintiff was a pretrial detainee when the events in question occurred, his claim arises under the Due Process Clause of the Fourteenth Amendment. *See, e.g., Richko v. Wayne County, Michigan*, 819 F.3d 907, 915 (6th Cir. 2016). Pretrial detainees, however, are "entitled to the same Eighth Amendment rights as other inmates." *Ibid.* Accordingly, Plaintiff's claim is assessed under the familiar Eighth Amendment standard pursuant to which Plaintiff must establish that Defendant McNeill was deliberately indifferent to a substantial risk that he might suffer serious harm. *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). To establish that McNeill acted with deliberate indifference, Plaintiff must demonstrate that McNeill was "subjectively aware of the risk," but failed "to take reasonable measures to abate it." *Greene*, 361 F.3d at 294 (quoting *Farmer*, 511 U.S. at 829, 847). Specifically, Plaintiff must establish: (1) Defendant McNeill had reason to believe Plaintiff would be assaulted by another inmate and (2) McNeill had

---

[1] This assault was recorded by the jail's security cameras. Debose struck Plaintiff from behind, after which Plaintiff and Debose traded several blows. (ECF No. 29, Exhibit A).

6

both the opportunity and means to prevent the assault. *See, e.g., Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013).

In support of his motion for summary judgment, Defendant McNeill has submitted an affidavit in which he asserts the following. (ECF No. 29-4, PageID.191-94). At approximately 3:00 p.m. Debose asked McNeill "if it would be possible to watch [a basketball] game" on the television. Because there were two televisions in the area, McNeill informed Debose and the other inmates present, including Plaintiff, that one of the televisions would be tuned to the basketball game. Plaintiff "took exception" to this decision and "yelled to Debose that he needed a pregnancy test because he was acting like a bitch." McNeill did not hear Debose respond to Plaintiff.

Plaintiff has also submitted an affidavit in support of his position. (ECF No. 33, PageID.267-72). Much of Plaintiff's affidavit, however, is largely irrelevant as it consists primarily of argument and unsubstantiated assertions that Defendants are lying, rather than statements of fact regarding matters of which Plaintiff has first-hand knowledge. Plaintiff does assert, however, that, during the encounter described by McNeill, Debose stated that he was going to beat Plaintiff's ass. (*Id.* at PageID.268). Plaintiff asserts that McNeill heard Debose make this statement. Even interpreting this evidence in Plaintiff's favor, however, does not advance Plaintiff's cause.

It has long been recognized that "threats between inmates are common" and are not necessarily sufficient to "impute actual knowledge of a substantial risk of harm." *Reedy v. West*, 988 F.3d 907, 915 (6th Cir. 2021). In this respect, the decision in *Reedy* is instructive. In 2016, David Reedy was a prisoner in the custody of the MDOC. *Id.*

7

at 909. In March of that year, Oscar Hensley was assigned to room with Reedy. *Ibid.* The relationship between Reedy and Hensley "was good" initially. By "late June," however, Hensley began threatening Reedy. *Id.* at 910.

On July 13, Reedy informed prison counselor Michael West that Hensley had "threatened him." Plaintiff requested that he and Hensley be housed in different cells. West responded that he would "get back with" Plaintiff, but he failed to do so. On July 19, Reedy and Hensley "went together to West's office." *Ibid.* Hensley informed West that he "needed to be moved or he was going to do what he's got to do." *Id.* at 911. As Hensley exited, West stated to Hensley, "do what you got to do." *Id.* at 910. Reedy then spoke with West and "reiterated his fear for his safety." *Ibid.* Early the next morning, Hensley assaulted Reedy with a large rock. *Id.* at 911.

Reedy later initiated legal action alleging that West violated his Eighth Amendment rights by failing to protect him from Hensley's assault. *Id.* at 909. West's motion for summary judgment was granted by the district court, a decision Reedy appealed to the Sixth Circuit. In affirming the dismissal of Reedy's claim, the court concluded that "Reedy was not, objectively speaking, incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 912. In support of this conclusion, the court observed that according to Reedy, his relationship with Hensley "for the most part . . . was good" without "no real conflict or fire." *Id.* at 913. The court also noted that "[p]rior to the assault, there is no evidence that Hensley ever harmed Reedy. Nor is there evidence Hensley had a violent criminal history or was ever involved in a physical altercation in prison." *Ibid.*

8

With respect to the subjective element of the analysis, the court likewise found Reedy's evidence lacking. The court noted that the "only evidence of what West knew about Hensley and Reedy is limited to a total of two conversations," Reedy's expression that Hensley had "threatened" him and Hensley's statement that he was "going to do what he's got to do" if he was not placed in a different cell. *Id.* at 914-15. The court observed that "threats between inmates are common" and do not necessarily suffice to inform jail officials that there exists "a substantial risk of harm" to a prisoner. *Id.* at 915. The court noted that there was "no evidence that West was aware of any information suggesting that Hensley had a propensity for violence, had assaulted anyone, or was disciplined in prison." *Ibid.*

Here, Defendant McNeill asserts that he was "not aware of any altercations or conflict between Debose and Plaintiff prior to the fight on April 20, 2019." (ECF No. 29-4, PageID.193). Plaintiff has presented no evidence to the contrary. Plaintiff has likewise presented no evidence that Debose had a propensity for violence, had a history of assaulting inmates or staff, or had a history of misconduct. The only evidence supporting Plaintiff's claim is the assertion that Debose proclaimed that he was going to beat Plaintiff's ass. By itself, however, this statement fails to establish that Plaintiff faced a serious threat of harm. Moreover, this isolated statement is insufficient to establish that Defendant McNeill recognized, or should have recognized, that there existed a threat to Plaintiff's health or safety. Accordingly, as to this claim, the undersigned recommends that Plaintiff's motion be denied and Defendant McNeill's motion be granted.

## II. Use of Excessive Force

Immediately following his encounter with Debose, Plaintiff was placed in handcuffs and escorted to a different area of the jail. This required Plaintiff to be led up a stairwell. Plaintiff alleges that after reaching the top of the stairwell, Defendants McNeill and DeVormer slammed him against a window frame and then knocked him to the ground after which DeVormer placed his knee on Plaintiff's lower back and forced his face down into the top stair grate.

To prevail on an excessive force claim, a pretrial detainee must establish that "the force purposely or knowingly used against him was objectively unreasonable." *Cretacci v. Call*, 988 F.3d 860, 869 (6th Cir. 2021) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). The objective reasonableness of a use of force "turns on the facts and circumstances of each particular case" including: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of any injury suffered by the plaintiff; (3) any effort by the officer to temper or limit the amount of force employed; (4) the severity of the security problem precipitating the use of force; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Cretacci*, 988 F.3d at 869 (citing *Kingsley*, 576 U.S. at 397). In assessing the totality of the circumstances, the Court must consider "what a reasonable officer on the scene knew at the time and account for the jail's legitimate interest in maintaining their facility, 'deferring to policies and practices that . . . are needed to preserve internal order and discipline and to maintain institutional security.' " *Cretacci*, 988 F.3d at 869 (citing *Kingsley*, 576 U.S. at 397).

10

The incident in question was recorded by a camera located inside the jail and reveals the following. (ECF No. 29-2, Exhibit A). Initially, Plaintiff was standing at the base of a stairwell, with his hands cuffed behind his back. Two officers, presumably Defendants McNeill and DeVormer, are standing near Plaintiff. One of the officers then begins to escort Plaintiff up the stairwell with the second officer following several steps behind. Upon reaching the top of the stairs, the group turns to the right and proceeds toward a door.[2] Despite the restricted view, Plaintiff can be seen engaging in unusual activity with his feet immediately after which he is taken to the ground and secured by the two officers.

In his complaint, Plaintiff concedes that upon reaching the top of the stairwell, he "started screaming and kicked the door. . . ." (ECF No. 1, PageID.9). Defendants McNeill and DeVormer both assert that they escorted Plaintiff up the stairwell following his encounter with Debose. (ECF No. 29-4, PageID.191-94, 207-09). According to Defendants, once they reached the top of the stairs, Plaintiff began to scream, kicked a door, and attempted to push DeVormer down the stairs. (*Id.*). Plaintiff has presented no evidence to the contrary. McNeill and DeVormer assert that, in response to Plaintiff's conduct, DeVormer pushed Plaintiff against a door. Because Plaintiff continued to resist, DeVormer then grabbed Plaintiff and "took him to the ground," after which McNeill and DeVormer secured Plaintiff and waited for additional officers to arrive. (*Id.*). Defendants' assertions are not inconsistent with the video evidence.

---

2 Because of the location of the camera, once the group reached the top of the stairwell only the lower portion of their bodies are visible.

11

Moreover, Plaintiff has presented no evidence to the contrary.

Considering the totality of the circumstances, the Court finds that Defendants are entitled to relief. Defendants assert that Plaintiff actively resisted their control, assertions of which are consistent with the video evidence. Plaintiff concedes the matter. Plaintiff was examined by a nurse immediately following this incident. (ECF No. 29-4, PageID.193, 196-97, 208). This examination revealed that, aside from knuckle abrasions suffered during his fight with Debose, Plaintiff was not otherwise injured or in need of medical care. (*Id.*). Plaintiff has presented no evidence that Defendants' use of force was disproportionate to the threat he represented by actively resisting Defendants' control. In short, Plaintiff has failed to present evidence creating a genuine factual dispute on the question whether Defendants' use of force was objectively unreasonable. Accordingly, as to this claim, the undersigned recommends that Plaintiff's motion be denied and Defendant McNeill's and Defendant DeVormer's motions both be granted.

### III. Deliberate Indifference

Plaintiff alleges that, after being secured by Defendants, his request for medical attention was denied. Plaintiff alleges that Defendants were deliberately indifferent to his serious medical needs. Because Plaintiff was a pretrial detainee when the events in question occurred, his claim arises under the Due Process Clause of the Fourteenth Amendment. *See, e.g., Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018). Nevertheless, claims of denial of medical treatment by pretrial detainees are analyzed pursuant to the same Eighth Amendment standard applicable to claims asserted by

12

convicted prisoners. *Ibid.*

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Thus, the objective component is satisfied where a prisoner receives no treatment for a serious medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). But, if the prisoner "has received on-going treatment for his condition and claims that this treatment was inadequate," he must demonstrate that his care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Ibid.*

13

If the prisoner satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.' " *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847). To satisfy this part of the analysis, the prisoner must demonstrate that the defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005).

To the extent, however, that a prisoner simply disagrees with the treatment he received, or asserts that he received negligent care, summary judgment is appropriate. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical

14

treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

Defendants McNeill and DeVormer both assert that Plaintiff was examined by a nurse shortly after the incidents described herein. (ECF No. 29, PageID.193, 208). This is supported by the medical evidence. (*Id.*, PageID.196-97). Plaintiff does not dispute this evidence. Plaintiff concedes that a nurse examined him immediately after the events described herein. (ECF No. 33, PageID.269). While Plaintiff may not be satisfied with the medical care he received, that dissatisfaction does not advance his claims against Defendants McNeill and DeVormer. In short, Plaintiff has presented no evidence that Defendants refused or impeded his request for medical treatment. Accordingly, as to this claim, the undersigned recommends that Plaintiff's motion be denied and Defendant McNeill's and Defendant DeVormer's motions both be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment (ECF No. 28) be granted, Plaintiff's Motion for Summary Judgment (ECF No. 31) be denied, and this action terminated. For the same reasons, the undersigned finds that an appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the undersigned further recommends that an appeal of this matter by Plaintiff would not be in good faith.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                                                       Respectfully submitted,

Date: June 2, 2021                                       /s/ Phillip J. Green
                                                                       PHILLIP J. GREEN
                                                                       United States Magistrate Judge