UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN KEITH SCHWAB,

    Plaintiff,

v.

    Case No. 1:20-cv-485

JOEL DEVORMER, et al.,

    Hon. Hala Y. Jarbou

    Defendants.
_____/

## ORDER

Plaintiff Brian Keith Schwab, a state prisoner proceeding *in forma pauperis*, brings a civil rights action under 42 U.S.C. § 1983 alleging violations of his constitutional rights. (Compl., ECF No. 1.) This case arises from events that transpired while Schwab was a pretrial detainee at the Kent County Jail. Two Defendants, both Kent County deputies, remain: Joel DeVormer and Ernest McNeill. Three claims are left. Schwab says: (1) McNeill failed to protect him from an assault by another inmate; (2) McNeill and DeVormer used excessive force against him; and (3) McNeill and DeVormer exhibited deliberate indifference to his serious medical needs. (R&R, ECF No. 35, PageID.290.)

DeVormer and McNeill jointly moved for summary judgment on all outstanding claims. (ECF No. 28.) Schwab countered with his own motion for summary judgment. (ECF No. 31.) Magistrate Judge Phillip J. Green produced a Report and Recommendation (R&R) recommending that the Court grant Defendants' motion, deny Schwab's, and enter judgment in favor of Defendants. (R&R, PageID.289.) Before the Court are Schwab's timely objections to the R&R. The Court will adopt the R&R's recommended disposition of the case.

## I. Background

The R&R details the factual background of the case, which the Court will briefly sketch here. While a pretrial detainee, Schwab claims another inmate, Rodney Debose, threatened to assault him. (*Id.*, PageID.290.) This occurred in the dayroom of the county jail, where there are two TVs. According to Schwab, Debose asked another inmate to take a remote from him, ostensibly to free his hands to "beat[]" Schwab's "ass." (Schwab Aff., ECF No. 33, PageID.268.) Debose then went to back to his cell to "pack" his things while announcing his intent to assault Schwab. (*Id.*)

Schwab avers that Debose said these things within earshot of McNeill, but that McNeill did nothing and simply walked away. (*Id.*) McNeill denies hearing Debose make any threats but does remember Schwab calling Debose a "bitch." (McNeill Aff., ECF No. 29-4, PageID.192.) McNeill says he left the dayroom to submit a "keep separate" request regarding Schwab and Debose. (*Id.*) Schwab contends he did not say anything bad to Debose but does not dispute McNeill's statement that he left to submit a "keep separate" request. Schwab then went to speak to a housing unit officer about Debose's threat. (R&R, PageID.290.) During this conversation, Debose walked up behind Schwab and began striking him; a fight ensued. (*Id.*)

McNeill rushed back and, with the help of others, broke up the fight. Both Debose and Schwab were placed in handcuffs. Schwab says the cuffs were so tight they cut into his wrists. (*Id.*) He requested medical attention. (*Id.*) McNeill refused, instead opting to take Schwab to segregation. They ran into DeVormer on the way, who began to assist in Schwab's transportation. (*Id.*) Schwab asked for the handcuffs to be loosened. He always asked for the cuffs to be removed before going up the stairs to segregation, fearful he would suffer a panic attack. DeVormer allegedly responded with demeaning comments. (*Id.*)

2

When the three reached the top of the stairs, Schwab began to lash out. He screamed, thrashed, and kicked a door. (*Id.*, PageID.291.) Schwab says his behavior was the result of a panic attack. McNeill and DeVormer pushed Schwab into a door and then brought him to the ground. (*Id.*, PageID.299.) McNeill and DeVormer kept Schwab on the ground while they waited for additional officers to arrive and assist. (*Id.*) The incident was captured on a prison security camera. Schwab claims further requests for medical attention were denied.

Schwab was then taken into a cell, escorted by officers. He says several officers kicked and struck him once in the cell. However, to the extent this claim is true, neither McNeill nor DeVormer were involved. Video footage shows McNeill never entered the cell and left the area about twenty seconds after Schwab was brought in. DeVormer was not one of the officers who transported Schwab to the cell after the incident on the stairs.

Shortly thereafter, a nurse examined Schwab. (Post-Use-of-Force Medical Report, ECF No. 29-5.) The nurse found that Schwab had no visible injuries aside from "old abrasions" on his knuckles "from [a] previous injury." (*Id.*) The nurse reported "[n]o complaints" from Schwab, who "sa[id] he is fine." (*Id.*)

These events all took place within a short period of time: the fight between Schwab and Debose occurred around 3:00 PM on April 20, 2019; the incident on the stairs at around 3:15; and the nurse examination at around 3:20.

## II. Standards

### A. Objections to R&Rs

Under 28 U.S.C. § 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure, the Court must conduct de novo review of those portions of the R&R to which objections have been made. Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

**B. Summary Judgment**

Summary judgment is appropriate when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Moreover, a party may seek summary judgment by showing that the nonmoving party has failed to produce evidence supporting an essential element of his or her case. *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005).

Courts must examine the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to determine whether there is a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P 56(c)) (internal quotations omitted). A fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely disputed when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249 (citing *First Nat'l Bank. of Ariz. v. City Serv. Co.*, 391 U.S. 253, 288-89 (1961)).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party [by a preponderance of the evidence], there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *City Serv.*, 391 U.S. at 289). In considering the facts, the Court must draw all inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment is not an opportunity for the Court to resolve factual disputes. *Anderson*, 477 U.S. at 249.

### III. Analysis

Since he was a pretrial detainee when the relevant events occurred, Schwab's claims implicate the Due Process Clause of the Fourteenth Amendment. "[T]he Eighth Amendment applies only to those individuals who have been tried, convicted, and sentenced . . . . [while pretrial detainees] are protected by the Fourteenth Amendment's Due Process Clause." *Richko v. Wayne Cnty.*, 819 F.3d 907, 915 (6th Cir. 2016). Nevertheless, the Fourteenth Amendment affords pretrial detainees "'the same Eighth Amendment rights as other inmates.'" *Id.* (quoting *Thompson v. City of Medina*, 29 F.3d 238, 242 (6th Cir. 1994)). "Supreme Court precedents governing prisoners' Eighth Amendment rights also govern the Fourteenth Amendment rights of pretrial detainees." *Id.* (citation and internal quotation marks omitted).

Defendants' motion for summary judgment asserted the defense of qualified immunity, which protects government officials from liability for constitutional torts unless their actions violated a clearly established right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity requires a two-part inquiry. First, did the defendants violate a constitutional right of the plaintiff? If so, was that right clearly established at the time of the purported violation? *Richko*, 819 F.3d at 915 (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The R&R rests on the first prong, concluding that Schwab failed to show that he suffered any constitutional violations at all. Schwab's objections challenge this finding.

**A. Failure to Protect**

To succeed on his failure to protect claim, Schwab must show that McNeill was deliberately indifferent to a substantial risk that he might suffer serious harm. *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). To establish deliberate indifference, Schwab must show that McNeill was "subjectively aware of the risk," but failed "to take reasonable measures to abate [that risk]." *Id.* (quoting *Farmer*, 511 U.S.

at 829, 847) (internal quotation marks omitted). Schwab needs to establish that "McNeill had reason to believe [Schwab] would be assaulted by another inmate," and that "McNeill had both the opportunity and the means to prevent the assault." (R&R, PageID.294-295 (citing *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013)).)

The R&R found that McNeill had no reason to believe Debose would assault Schwab. (*Id.*, PageID.297.) The R&R relies heavily on *Reedy v. West*, 988 F.3d 907 (6th Cir. 2021), which states that "threats between inmates are common" and such threats cannot always be used to "impute actual knowledge of a substantial risk of harm." *Reedy*, 988 F.3d at 915. In *Reedy*, a prisoner violently assaulted his cellmate, who then sued officials for failure to protect. Prior to the attack, the assailant told a prison official that he "needed to be moved or he was going to do what he's got to do." *Id.* at 911. The plaintiff "reiterated his fear for his safety," but officials did not act. *Id.* at 910. Because the assailant did not have a violent history and the plaintiff failed to properly articulate the degree of his concerns, the Sixth Circuit held that the defendants did not perceive a risk of substantial harm and thus could not be liable for failure to protect.

Schwab makes two objections here. First, he contends that *Reedy* is distinguishable. In *Reedy*, the assailant only ever issued threatening words. Here, however, Schwab says that Debose made a threat within earshot of McNeill and immediately took steps to make good on his threat by emptying his hands of a TV remote and packing up his cell while audibly planning his attack. The Court agrees that, to the extent McNeill witnessed Debose's preparation for assault, there is a colorable argument that McNeill perceived a risk of harm. True, McNeill denies hearing any threats, but Schwab asserts he was only three feet away when Debose announced his intent. Drawing inferences in Schwab's favor, a reasonable jury could find McNeill heard Debose make a threat.

But ultimately this objection is irrelevant. Schwab disputes one facet of McNeill's story—that he did not hear Debose make a threat—but does not contest another key facet. McNeill says he left the dayroom area to submit a "keep separate" request regarding Schwab and Debose, and Schwab does not dispute this. Thus, even taking Schwab's account as true, McNeill *did* act to diffuse the tension between Schwab and Debose. And his actions, though unsuccessful, were constitutionally adequate. McNeill's conduct was not "'obdurate' or 'wanton' . . . [and] did not exhibit[] recklessness or callous neglect." *Nelson v. Overberg*, 999 F.2d 162, 165 (quoting *Whitely v. Albers*, 475 U.S. 312, 318 (1986)). To the extent the R&R erred in concluding that McNeill was not subjectively aware of a substantial risk of harm, no different disposition would result. McNeill is still entitled to summary judgment on the failure to protect claim.

Schwab's second objection says certain Michigan rules and protocols entitle him to protection from personal abuse, injury, and harassment. (Pl.'s Objs., ECF No. 36, PageID.307.) But his failure to protect claim is based on the Fourteenth Amendment of the U.S. Constitution. The provisions cited by Schwab have no bearing here. This objection will also be denied.

**B. Excessive Force**

Excessive force occurs when an official "purposely" or "knowingly" uses an "objectively unreasonable" degree of force against an inmate. *Cretacci v. Call*, 988 F.3d 860, 869 (6th Cir. 2021) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)) (internal quotation marks omitted). In determining objective reasonableness, courts consider the totality of the circumstances from the perspective of a "reasonable officer on the scene . . . at the time and account for the jail's legitimate interest in maintaining their facility." *Id.* Several factors to be examined include: (1) the relationship between the need for use of force and the amount of force used; (2) the extent of any injury suffered by the plaintiff; (3) any effort by the officer to temper or limit the amount of force employed; (4) the severity of the security problem precipitating the use of force;

(5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Id.* (citing *Kingsley* 576 U.S. at 397).

Defendants here contend that "once they reached the top of the stairs, [Schwab] began to scream, kicked a door, and attempted to push DeVormer down the stairs." (R&R, PageID.299.) In response, DeVormer pushed Schwab against a door. (*Id.*) Schwab continued to resist, so Defendants took him to the ground and kept him there until additional officers arrived on scene. After reviewing the security footage, the R&R concluded that "Defendants' assertions are not inconsistent with the video evidence." (*Id.*) The R&R thus determined that Defendants were justified in using force against Schwab. The R&R then considered the medical examination, occurring about five minutes later, which showed that "aside from knuckle abrasions suffered during his fight with Debose, [Schwab] was not otherwise injured or in need of medical care." (*Id.*, PageID.300.) Based on the medical examination, the R&R determined that Defendants' use of force was not "disproportionate to the threat he represented by actively resisting Defendants' control." (*Id.*) Schwab had failed to show that the force used was objectively unreasonable under the circumstances.

Schwab objects that the use of force was unjustified because he was having a panic attack, not intentionally resisting Defendants. (Pl.'s Objs., PageID.308.) That is beside the point. Schwab was being escorted to segregation, and he began to act in ways that risked loss of control by Defendants at the top of a flight of stairs. Defendants needed to ensure they had physical control over the inmate they were escorting. Some force was therefore needed.

And Defendants did not use a great deal of force. Just five minutes after the incident, a nurse examined Schwab, who had "no complaints" and "sa[id] he [was] fine." (Post-Use-of-Force Medical Report.) The nurse noted no visible injuries other than "old abrasions . . . from [a]

8

previous injury." (*Id.*) Schwab protests that the nurse "only checked [his] pulse, oxygen, and heart rate," but that is patently contradicted by the report. The nurse checked for injuries and saw none that were caused by Defendants' use of force. Schwab points to two records of medical examinations, conducted the day after the use of force, in which he complains of reduced eyesight in his right eye, daily migraines, and other injuries, none of which were problems before the incident on the stairs. (Pl.'s Objs., PageID.309 (citing April 21, 2019 Reports, ECF No.32-1, PageID.254-257).) But nurses conducted a follow-up examination a few days later and found "no vision loss" and aside from a "faint bruise" on the right side of his head, Schwab had no "abrasions or lacerations." (April 24, 2019 Report, ECF No. 32-1, PageID.253.) The medical evidence is simply not consistent with Schwab's claim of excessive force.

Schwab also objects that the R&R failed to address the alleged kicking by officers after he was brought into the segregation cell. (Pl.'s Objs., PageID.309.) He is correct. Assuming his allegations are true, however, they do not support excessive force claims against McNeill and DeVormer. As mentioned earlier, video evidence shows that neither Defendant entered Schwab's cell and that they both left the area. If there was any improper use of force against Schwab in his cell, Defendants neither witnessed nor participated in it. This objection fails.

Finally, Schwab objects that Defendants' use of force on the stairs was not allowed under Michigan administrative rules. Michigan rules are not at issue here—the Fourteenth Amendment of the U.S. Constitution is. Defendants' compliance or noncompliance with Michigan law does not change the fact that Schwab has failed to show their actions were objectively unreasonable under the Due Process Clause of the Fourteenth Amendment. This objection is also denied.

9

**C. Deliberate Indifference**

An inmate's Fourteenth Amendment rights are violated when officials are deliberately indifferent to his "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976). Deliberate indifference claims have an objective component and a subjective component.

The objective component looks to the necessity for medical care and the care provided. A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Where an inmate does receive medical attention, a deliberate indifference claim only succeeds if the care received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). On the other hand, if the medical care was simply inadequate, or negligently provided, or if the inmate disagrees with the treatment received, there is no valid claim for deliberate indifference. *Id.*; *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06).

The subjective component looks to the defendant's state of mind. To be deliberately indifferent, the defendant must recognize and disregard "an excessive risk to inmate health or safety; the [defendant] must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 829 U.S. at 837. A defendant is not deliberately indifferent if he takes "reasonable measures to abate" a perceived risk. *Greene*, 361 F.3d at 294. Rather, he must act with "deliberateness tantamount to intent to punish" to be liable. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 813 (6th Cir. 2005).

The R&R notes that Schwab was examined by a nurse shortly after the Debose assault and the incident on the stairs. (R&R, PageID.303.) The sequence of events is relevant: Debose attacked Schwab, who was then brought to a cell and a nurse examined Schwab shortly thereafter.

10

This all occurred within about twenty minutes. As the R&R puts it, there is "no evidence that Defendants refused or impeded [Schwab's] request for medical treatment." (*Id.*) The R&R reasoned that "[w]hile [Schab] may not be satisfied with the medical care he received, that dissatisfaction does not advance his claims against Defendants McNeill and DeVormer." (*Id.*) Hence, the R&R recommended granting Defendants' motion for summary judgment on the deliberate indifference claim.

Schwab objects that he was not seen by a nurse until "24 hours" after the incident on the stairs. (Pl.'s Objs., PageID.310.) That is simply not true. He was seen within five minutes, where he said he had "no complaints." (Post-Use-of-Force Medical Report.) He was also seen the next day, on April 21, and three days after that. In his objections, Schwab says that when his symptoms worsened between the first and second examination, he asked Defendants to call a nurse but they ignored him. (Pl.'s Objs., PageID.310.) No such assertion is included in his affidavit attached to his motion for summary judgment, nor is it found in his verified complaint. Thus, Schwab has not put any evidence in the record to support this contention. His objection is denied.

Schwab again objects that Defendants' conduct violated Michigan administrative rules. That objection again fails because the question is whether Defendants violated a constitutional right, not state rules or procedures.

### IV. Conclusion

For all of the above reasons, Schwab's objections will be denied, and the Court agrees with the R&R that Defendants' joint motion for summary judgment should be granted. Because the Court will grant that motion for summary judgment and terminate the case, Schwab's own motion for summary judgment will be denied.

Accordingly,

11

**IT IS ORDERED** that the R&R (ECF No. 35) is **REJECTED** with respect to its conclusion that there is no evidence Defendant McNeill heard an inmate threaten Plaintiff and with respect to the R&R's failure to address Defendants' alleged failure to prevent excessive force by other corrections officers.

**IT IS FURTHER ORDERED** that the R&R is **APPROVED** and **ADOPTED** as the opinion of the Court in all other respects.

**IT IS FURTHER ORDERED** that Defendants' joint motion for summary judgment (ECF No. 28) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment (ECF No. 31) is **DENIED**.

A judgment will enter consistent with this Order. The Court declines to certify that an appeal would not be taken in good faith.

Dated: July 9, 2021 /s/ Hala Y. Jarbou
HALA Y. JARBOU
UNITED STATES DISTRICT JUDGE